230 P.2d 516

**URVALEJO v. INDUSTRIAL COMMISSION et al.**

**No. 5451.**

Supreme Court of Arizona.

Decided April 30, 1951.

Rosenberg & La Vetter, Tucson, for petitioner.

H. S. McCluskey, Phoenix, for respondents Industrial Commission, Robert E. Yount and Donald J. Morgan, Phoenix, of counsel.

Guynn & Twitty, Phoenix, for respondent-employer.

PHELPS, Justice.

This case comes to us on certiorari for the review of an award of the Industrial Commission entered on November 8, 1950, denying further compensation to petitioner.

On May 26, 1948, petitioner was injured by accident arising out of and in the course of his employment as a miner with the Eagle Picher Mining and Smelting Company. The injury sustained by petitioner resulted from falling backwards over an 8 x 8 timber and consisted primarily of a compound fracture of the 9th, 10th and 11th ribs on the right side. The material facts relating to the injury and the various applications for hearing, rehearings and readjustments made by petitioner will be hereinafter set forth.

The commission finally, on November 8, 1950, denied further relief and again affirmed its findings and awards previously made. It is this order that the court is asked to review.

■ We have consistently adhered to the rule that where there is a conflict in the evidence before the commission, its findings will not be disturbed and that it is our duty in such cases to view the evidence in the most favorable light to sustain the findings and award of the commission. If there is any substantial evidence to support such findings and award it must stand.

■ Let us see what the evidence discloses in the instant case.

Dr. Meade Clyne, physician for the employer, attended petitioner immediately after his injury and he and his associate have at all times since rendered him medical and surgical aid. The petitioner was discharged by Dr. Clyne on the 11th day after the accident and recommended for regular work. Application had been duly made for compensation and on July 16, 1948, the commission made its award terminating compensation on the basis of total temporary disability and for accident benefits. It later developed that the 11th rib had not properly reunited and two operations were required in order to correct this defect, the last of which being performed on February 14, 1949. On the following May 13th petitioner was again released by Dr. Clyne and recommended ready for regular work. On June 20, 1949, a medical board consisting of Doctors Lindsay E. Beaton, Alfred O. Heldobler and Dr. Clyne made a report in which they stated after examination of the petitioner: "It is the opinion of the examiners that in all probability the present disability is not a result of his injury, but the result of extensive hypertrophic changes in the lumbar and dorsal vertebrae which were preexisting." The commission thereafter on July 7th of that year made its findings and award allowing compensation from May 26, 1948, through July 6, 1948, and October 19, 1948 through May 12, 1949, and for accident benefits until June 17, 1949.

Upon a later application for readjustment and reopening of the claim the commission appointed Doctors George Dixon, Lindsay E. Beaton, H. D. Cogswell and Meade Clyne as a medical board to examine and report on the condition of the petitioner and in that report they found and reported hypertrophic-arthritic changes in his spine and a minimal herniation of the lung pleurae in the vicinity of the 11th rib and that petitioner had sustained a 10% total permanent functional general disability as a result of his injury. Dr. Clyne later wrote a letter to the commission in which he stated that in reviewing the reports of consultations that were held in regard to petitioner's case, he desired to change his opinion as to the 10% total permanent functional general disability to read that "we therefore feel this man can be said to have recovered from the result of his injury of May 26, 1948, and no further treatment is indicated." A study of the evidence discloses, however, that neither Doctors Cogswell, Beaton nor Dixon ever stated that they desired to change their opinion as to the 10% functional disability.

Finally at a hearing before the commission on October 7, 1950, a number of doctors testified, among whom was Dr. A. N. Shoun who stated that he found in the area where the operation was performed upon the 11th rib a herniation approximately 5 x 8 cms. in diameter with a longer diameter in the line with the ribs and that there was a tenderness over the distribution of the 10th and 11th intercostal nerves projected on to the abdominal wall, both of a deep and superficial nature with hyperesthesia on light pressure. He further stated he thought that the hypertrophic changes in his spine shown by the X-ray were aggravated by the injury. We quote his language: "I think the injury made the hypertrophic changes, produce symptoms in the rest of his back." Dr. Cogswell stated at this hearing that the hypertrophic changes of the lower dorsal and upper lumbar vertebrae could be to some degree the cause of symptoms that he complained of when he saw him. Dr. Lindsay E. Beaton, neurologist, who was a member of the medical board finding a 10% permanent disability, stated that being a neurologist he concurred in the finding of a 10% functional disability because of the opinion expressed by surgeons and orthopedists on the board, who were specialists in that line.

Dr. Clyne testified that the conclusions of the medical board of which he was a member, that petitioner had suffered a 10% permanent disability was a more or less compromise agreement and that the decision was reached just "to get the thing closed up." He also stated that the pain which petitioner claimed was located in his back and different parts of his body might have been there "* * * but it wasn't due to a local condition. It could be referred from some other place, nerves

coming out from the spinal column. And then our final conclusion was, after consultation in our office with *three or four fellows,* one a specialist in this line, that his pain was due to hypertrophic changes that were occurring in his spine causing pressure on some nerves in there that referred the pain around to this area. * *" (Emphasis supplied.)

This latter view of Dr. Clyne's reaffirms the findings previously made by a medical board consisting of Doctors Clyne, Heldobler and Beaton. Dr. Clyne was later asked the following questions and made the following answers:

"Q. What kind of injury did he have near the spine? A. Well, that was the bruising, discoloration in the skin. .

"Q. And you also speak of hypertrophic changes. Would this injury aggravate it? A. I don't think so. I don't know though. I couldn't swear they did or they didn't. Ordinarily superficial wounds does not influence the deposit of calcium in the spine. I don't think so."

The doctor in referring to superficial wounds evidently had reference to bruising and discoloration in the skin as a compound fracture of three ribs would certainly not be considered superficial wounds.

Although it is agreed by all the doctors there has resulted a herniation in the area of the 11th rib where the operation was performed, it will be observed from the evidence above related that the issue in this case is narrowed down to one thing. All the physicians agree that petitioner is and has been for some time suffering from arthritis of the spine. Doctors Clyne, Heldobler and Beaton state in their report of June 20, 1949 that "in all probability the present disability is not a result of his injury but the result of extensive hypertrophic changes in the lumbar and dorsal vertebrae which were preexisting." There was no opinion expressed in that report as to whether petitioner's injury aggravated his arthritic condition.

Dr. Shoun stated on the stand that in his opinion the injury sustained by petitioner had the effect of aggravating the hypertrophic changes in the spine resulting in a permanent partial disability, and in his report of January 11, 1950, he stated "that complicating factors aggravate, or are aggravated by the results of the injury" (evidently referring to the arthritic condition mentioned in his testimony). Dr. Clyne was the only other physician who attempted to express an opinion upon the question of whether petitioner's injuries aggravated the hypertrophic changes in his spine and as shown above, Dr. Clyne stated that he didn't know, he couldn't swear they did or they didn't but that he didn't think so. We are of the opinion that this statement has no probative value whatever. Thus the unequivocal opinion of Dr. Shoun that the injury did aggravate and brought about the symptoms of which petitioner complains, stands unchallenged.

We therefore hold that there is no substantial evidence to sustain the finding of the commission denying petitioner further compensation.

Award set aside.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.